McKinney, J\,
delivered the opinion of the court.
This case was before us at the last term, and was remanded for a new trial. The question then, was, upon the effect of the supposed probate and registration of the deed of trust set forth in the record. And we held, that the registration of the deed was wholly inoperative, for the reason that Fowler, the maker of the deed, who was clerk of the county court, had no authority to take the probate of his own deed.
TJpon the second trial, the deed was proved by the two subscribing witnesses, and offered in evidence as a common law deed. To this, no valid objection can be made, by a subsequent purchaser from Fowler, with notice of the existence of the deed of trust. By our registration law, the deed would have been a nullity as against judgment creditors of Fowler, who are not affected by notice of an unregistered conveyance made by the debtor; but subsequent purchasers stand upon a veiy different footing; by the terms of the statute, only bona fide purchasers, without notice of such unregistered deed, are protected.
In the present action, which is trover, Neely, the trustee in the deed of trust, seeks to recover the. value of two horses purchased by Brevard from Fowler, the maker of the deed, after, as is assumed, the title to the property, by force of said conveyance, had passed to and become vested in the trustee.
The fact of notice has been passed upon by the jury, *167 who found for the plaintiff,. and is therefore to he taken as sufficiently established.
The question then, upon which the case depends, is, whether or not, before the sale to Brevard, the essential requisites to the validity of the deed, as a common law conveyance, had been so far complied with, as to transfer the title to the property, embraced therein, from Eowler to the trustee.
It becomes necessary in this view, to notice briefly the material facts of the case. The deed purports, upon its face, to have been executed on the 8th day of August, 1851, but this is shown to be false. The two subscribing witnesses both prove, “that Eowler called on them on the morning of the 11th of August, 1851, to witness said deed, -and that he, in their presence, signed his name to the deed;” they farther state, that at the time of then* attestation of the deed, they knew nothing of its contents, or of the date it bore; and that there was no person present but themselves and Eowler. The register of the county, who was one of the subscribing witnesses, proves, that the register’s office and county court office, were “kept together;” and after the execution of the deed, Eowler gave it to him, and requested him to take the deed and his register’s book to his, Fowler’s house, in the country, about a mile and half from town, to register the same, as he did not want it known until after registration; and accordingly the witness went to the country, taking his book and the deed with him, “and remained there a day or two before he returned with said deed:” and that only one person saw the deed after • he received it, until after it was registered. It appears that Brevard *168 was a creditor of Fowler’s, by judgment recovered before a justice of tbe peace, on the 29th of July, 1851, for $129 35. Upon this judgment an execution had been issued on the 6th of August, 1851, which was still in the hands of the officer at the time of the execution of said deed of trust: but which had, in fact, prior to the making of the deed, been stayed, by the consent of Brevard. It farther appears, that in the afternoon of the llth of August, the day on which the deed was executed, Brevard, accompanied by some two or three other persons, went to the house of Fowler. Fowler proposed to Brevard to take the property in satisfaction of the before mentioned judgment, and pressed Mm to do so. The latter refused for some time, but finally assented, and it was agreed between them that the horses sued for in this action should be received by Brevard in satisfaction of his judgment. The price agreed on is proved to have been the fair value of the horses. This purchase was made on the day the deed of trust was executed, and prior to this transaction, there is no proof in the record before us, of a delivery of the deed, or of notice, to the persons named as beneficiaries therein, or of their assent to the same: Neither is there any proof of an acceptance of the trust, by the trustee, nor even of notice of the execution of the deed. It is true, that the witness, Jetton, proves, that on the evening of the 8th of August, 1851, Fowler requested witness “to tell Neely he need not be uneasy, for he (Fowler) had made to Mm a deed of trust to secure his (Fowler’s) securities as clerk; and that he told Neely that night of the same.” This proof goes for nothing in the present case. It cannot be *169 held to relate to, or be applied to the deed under consideration, becanse in point of fact, this deed was not executed until the 11th of August: until then, it had no legal existence, as a deed merely signed and sealed by the party; and, of course, no notice of the deed, effectual for any purpose in law, could have been given to the trustee at an earlier time. Notice, prospectively, to the trastee, of an unexecuted deed, would be of no avail in this case, even if we could regard the message sent to Neely, on the 8th of August, as entitled to be so considered. But again, if any effect could be predicated of the notice, as it is called, sent to Neely, there is no intimation in the record that he ever in any way assented to, or expressed his willingness to accept the trust.
But we think it clear, that at the time of the purchase by Brevard, the trustee had acquired no interest in the property — the execution of the deed being incomplete. Delivery is an essential incident to the proper execution of a deed of trust, as well as of all other deeds. By the rule of the common law, the deed takes effect only from the delivery: and though it may have been signed and sealed in due form, if delivery has not taken place, it is wholly inoperative, and the title and dominion of the party remain absolute as before.
It is scarcely necessary to enter into any discussion of the question, as to what is necessary to constitute a delivery. The charge lays down the principle, “that if a deed be signed, sealed, and declared by the grantor, in the presence of the attesting witnesses, to be delivered as his deed, it is an effectual delivery, if there *170 be nothing to qualify the delivery; notwithstanding the grantee was not present, nor any person on his behalf,- and the deed remained in the possession of the grantor.”
Whether or not the law is too strongly stated in the charge, is not important to be considered in the determination of the present case; for, if the principle be admitted, it is manifest that the facts presented in the record do not make a case falling within it.
Nothing was either said or done by Eowler at the time of signing, indicating an intention thereby to deliver the deed. He simply requested the persons “to witness said deed,” without any declaration as to its contents,;, or its object, or his intention. Nor need we consider the effect, in general, of the delivery of a deed, by the grantor, to the register for the purpose of having the same spread of record. Under the circumstances of this case, no effect can be given to the act of handing the deed to the register. The probate of the deed being a nullity, and the deed, therefore, incapable of registration, the act of placing it in the register’s hands for the purpose of registration, was altogether nugatory. But if this objection were out of the way, the character of the delivery of the deed to the register, as a secret matter, to be kept concealed for a time from the knowledge of all persons, repels the idea of a delivery in the legal sense of the term. A delivery, to be valid, must be such as not only deprives the grantor of the power to recall the deed, but likewise such a consummation of the formalities of execution as to make the deed effectual to transfer the title. In the present case, at the time of the sale by Eow-ler, the deed was in the secret possession of the regis *171 ter; not even spread on the register’s hook, as we may infer from the proof. Nothing had been done which, in law, conld deprive Eowler of the power to recall and annul the deed. Nothing which could divest his title, or diminish his right of control over the property; and nothing that, in the most liberal view, could have the effect of imparting any interest in the property, either to the trustee or the beneficiaries named in the deed.
The question of delivery of the assignment is entirely distinct from the subsequent question as to the assent of the trustee, or of the creditors for whose benefit it may have been made.
An acceptance of the assignment is necessary to constitute the assignee a trustee for the creditors; but it may be valid though he refuse to accept: If made for the benefit of creditors, the assent of the trustee is not essential to its validity; and a court of equity, on behalf of the creditors, will enforce the execution of the trust. So, where the assignment is made, not directly to creditors, but to a trustee for their benefit, their assent is not absolutely necessary to the validity of the assignment. And the assent of the trustee may be presumed, for the prapose of giving operation to the deed, until the contrary appear. 8 Leigh’s Rep., 278. 1 American L. Oases, 96. So the assent of creditors will always be presumed. 3 Humph., 442.
But, although if the assignment be made without the knowledge of the trustee, or creditors, they may affirm it when it comes to their knowledge, and will be presumed to do so, in the absence of proof tending to a contrary conclusion; yet it is to be borne in mind, in *172 such case, that the assignment is revocable by the debt- or at any time before the creditors have received information of the assignment, and have affirmed it. 10 Yerg., 158. 6 Humph., 315.
It is likewise to be observed, that the doctrine upon the subject of the assent of creditors, and acceptance by the trustee, takes for granted that all the formalities of execution, essential to the validity of the deed, have taken place.
Upon a view of the whole case, we are of the opinion, that upon the facts in this record, the purchase by Brevard was valid, and vested him with a good title to the property sued for in the present action. The judgment of the circuit court will, therefore, be reversed, and the case be remanded for a new trial.